
FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT, E.D.N.Y.

★            ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
FRANK GUIDICE,

                    Petitioner,

     - against -

UNITED STATES of AMERICA,

                    Respondent.
-------------------------------------------------------X

03 CV 4983 (SJ)

**MEMORANDUM
& ORDER**

APPEARANCES

LINDA S. SHEFFIELD, ESQ.
2026 North Decatur Road, N.E.
Atlanta, Georgia 30307-1127
Attorney for Petitioner

ROSLYNN R. MAUSKOPF, ESQ.
United States Attorney
One Pierrepont Plaza
Brooklyn, New York 11201
By:    Jo Ann M. Navickas, Esq.
Attorney for Respondent

JOHNSON, Senior District Judge:

      Before the Court is a motion by Frank Guidice ("Petitioner"): (1) to vacate,

set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255; (2) for production

of certain grand jury testimony; (3) for production of a sealed order related to

Petitioner's trial counsel, Joseph Corozzo, Jr., Esq. ("Corozzo"); and (4) for the

government to provide information regarding all conflict hearings held as to

1

Corozzo since 2000. Petitioner also requests leave to amend his § 2255 petition to include several ineffective assistance of counsel claims, and claims arising from Crawford v. Washington, 541 U.S. 36 (2004) ("Crawford") and Blakely v. Washington, 542 U.S. 296 (2004) ("Blakely"). For the reasons stated herein, the Court DENIES Petitioner's § 2255 motion and all related requests.

## BACKGROUND[1]

Petitioner seeks to challenge a judgment, which followed a trial by jury, convicting Petitioner of: (1) armed robbery conspiracy, in violation of 18 U.S.C. § 1951 (the "Hobbs Act"); (2) attempted armed robbery, also in violation of the Hobbs Act; and (3) a related gun charge, in violation of 18 U.S.C. § 924(c). On January 12, 2001, this Court sentenced Petitioner to concurrent terms of 63 months imprisonment on the conspiracy and attempt charges, and a consecutive prison term of 60 months on the related gun charge, totaling 123 months imprisonment, as well as three years of supervised released and a $300 special assessment. United States v. Amato, No. 99 CR 536 (10) (SJ), Docket Entry 429 (sentencing minutes) (E.D.N.Y. January 12, 2001). Petitioner's judgment was affirmed on direct appeal. United States v. Amato, No. 01 CR 1046, 2002 WL 360735 (2d Cir. Mar. 7, 2002); cert. denied, Guidice v. United States, 537 U.S. 886 (Oct. 7, 2002).

---

[1] The parties' familiarity with the facts of this case is assumed.

2

On September 30, 2003, Petitioner filed a § 2255 petition with this Court raising several claims for relief, including claims for ineffective assistance of counsel by Corozzo and Petitioner's appellate counsel, Vivian Shevitz, Esq. ("Shevitz"). Petitioner also seeks the production of various materials he claims are relevant to his challenge of his conviction and sentence. In his Reply brief filed July 22, 2004, Petitioner requested leave to amend his § 2255 petition to include additional ineffective assistance of counsel claims, and claims based on Crawford and Blakely. On April 21, 2006, this Court issued an Order affording Corozzo and Shevitz the opportunity to respond to Petitioner's ineffective assistance of counsel claims. On September 12, 2006, Corozzo submitted a declaration addressing several of Petitioner's claims.

## STANDARD OF REVIEW

Under § 2255, a sentencing court may "vacate, set aside or correct" a conviction or sentence "imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255. Relief is generally available only for a constitutional error, defect of jurisdiction, or an error of law constituting "a fundamental defect which inherently results in a complete miscarriage of justice." Graziano v. United States, 83 F.3d 587, 590 (2d Cir.1996) (quoting United States v.

3

Bokun, 73 F.3d 8, 12 (2d Cir.1995); see also Hardy v. United States, 878 F.2d 94, 97 (2d Cir.1989).

"A § 2255 motion may not relitigate issues that were raised and considered on direct appeal." United States v. Perez, 129 F.3d 255, 260 (2d Cir.1997). The exception to this rule allows reconsideration of the claim if there has been an intervening change in the law, and the new law would have exonerated a defendant had it been in force when the conviction was affirmed on direct appeal. See Chin v. United States, 622 F.2d 1090, 1092 (2d Cir.1980); see also Bruce v. United States, No. 04 CV 3453, 2006 WL 1704473, at *5 (E.D.N.Y. June 12, 2006).

Furthermore, courts will not entertain § 2255 claims that were not raised on direct appeal, unless a petitioner can show that there was "cause" for failing to raise the claims earlier and "prejudice" resulting therefrom, or that the petitioner is innocent of the charges. See Bousley v. United States, 523 U.S. 614, 622-23 (1998). A petitioner may raise claims not previously raised on direct appeal "'where the issues were not raised at all on direct appeal due to ineffective assistance of counsel.'" Underwood v. United States, 15 F.3d 16, 18 (2d Cir.1993) (quoting Barton v. United States, 791 F.2d 265, 267 (2d Cir.1986)). Moreover, a petitioner may raise for the first time on collateral review a claim for ineffective assistance of counsel that was not raised on direct appeal. See Massaro v. United States, 538 U.S. 500, 504 (2003) ("We hold that an ineffective-assistance-of-

4

counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal.").

"A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." Bracy v. Gramley, 520 U.S. 899, 904 (1997). Rule 6(a) of the Rules Governing Section 2255 Proceedings provides that a § 2255 petitioner is entitled to undertake discovery only when "the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise."

## DISCUSSION

I. **Petitioner Claims The Theory Of The Case Presented To The Grand Jury To Secure The Indictment Was Different Than The Theory Presented To The Jury To Secure Petitioner's Conviction**

Relying on Stirone v. United States, 361 U.S. 212 (1960), Petitioner claims that the government constructively amended the indictment in his case. Specifically, Petitioner alleges that the government's proof at trial with respect to the interstate commerce element did not comport with the indictment, suggesting that Petitioner may have been convicted of a crime other than the one for which the grand jury returned the indictment. At minimum, Petitioner contends that because the indictment did not specify whether the government's grand jury theory with respect to the interstate commerce element of the Hobbs Act charges involved

5

robbery of the proceeds of a diamond merchant or a tool business, he is entitled to review the grand jury testimony of the case agent, Michael Breslin, as well as grand jury testimony of other unnamed agents. After reviewing these minutes, Petitioner alleges that he could then determine whether the theory presented at trial matched the theory presented to the grand jury.

## A. Procedural Hurdles

This claim was not preserved at trial or on direct appeal. Therefore, in order for this claim to be considered, Petitioner must demonstrate cause for failing to raise the claim earlier, and prejudice resulting therefrom.[2] The only explanation

---

[2] Petitioner may also avoid the procedural bar by showing that he is actually innocent. "To establish actual innocence, petitioner must demonstrate that, 'in light of all the evidence,' 'it is more likely than not that no reasonable juror would have convicted him.'" Bousley, 523 U.S. at 623 (quoting Schlup v. Delo, 513 U.S. 298, 327-28) (1995)). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." Id. (citing Sawyer v. Whitley, 505 U.S. 333, 339 (1992) ("A prototypical example of 'actual innocence' in a colloquial sense is the case where the State has convicted the wrong person of the crime."). Petitioner states in an Affidavit filed October 2, 2003: "I re-assert my plea of not guilty as to the robbery and the firearms charge, and I assert a claim of actual innocence." (Guidice Aff. ¶ 7.) However, Petitioner's claims mainly challenge the legal sufficiency of the evidence. Petitioner presents one claim arguably based on actual innocence, regarding aiding and abetting as to the § 924(c) charge. As discussed below, this claim is meritless. To the extent that Petitioner's other claims collectively amount to an actual innocence claim, they are unsubstantiated, contradicted by the overwhelming evidence against him at trial, and clearly insufficient to meet the high burden for establishing actual innocence. Thus, Petitioner may not avail himself of the narrow exception by which courts may review claims that are otherwise procedurally barred based on actual innocence. See Dretke v. Haley, 541 U.S. 386, 388 (2004) (citing Murray v. Carrier, 477 U.S. 478, 496 (1986)).

Petitioner offers for his failure to assert this claim previously is that Corozzo and Shevitz were both ineffective for failing to raise the claim. However, Petitioner did not plead in his § 2255 petition that his previous attorneys were ineffective for failing to raise this claim. Instead, in his Reply brief, Petitioner requested leave to amend his petition to include ineffective assistance of trial and appellate counsel claims with his <u>Stirone</u> claim, as a basis for avoiding procedural default of the claim. (Pet. Rep. at 1.) Respondent did not oppose the proposed amendment.

Although the Court has the authority to grant leave for a habeas petitioner to amend his petition under the standard provided by Fed. R. Civ. P. 15(a), <u>see</u> <u>Littlejohn v. Artuz</u>, 271 F.3d 360, 363 (2d Cir.2001), the Court may deny leave to amend where it would be futile to do so, <u>see Jones v. N.Y.S. Div. of Military &</u> <u>Naval Affairs</u>, 166 F.3d 45, 50 (2d Cir.1999) ("[A] district court may properly deny leave when amendment would be futile."). To determine whether leave to amend would be futile in this case, the Court must examine whether Corozzo and Shevitz were ineffective for failing to raise Petitioner's <u>Stirone</u> claim regarding the interstate commerce nexus, such that Petitioner can avoid procedurally defaulting the claim. <u>See Bousley</u>, 523 U.S. at 622-23.

7

**B.    Whether Corozzo's and Shevitz's Failure To Raise Petitioner's
Stirone Claim Constituted Ineffective Assistance**

In <u>Strickland v. Washington</u>, the Supreme Court established a two-part test

to determine whether an attorney's performance was ineffective. First, a defendant

or petitioner "must show that counsel's representation fell below an objective

standard of reasonableness . . . under prevailing professional norms." 466 U.S. 668,

688 (1984). Second, the defendant or petitioner must show that counsel's

performance prejudiced his defense. <u>See</u> <u>id</u>. at 687. To show prejudice, there must

be a reasonable probability that, but for counsel's unprofessional errors, the

outcome of the proceeding would have been different. <u>See</u> <u>id</u>. at 694.

A court considering a <u>Strickland</u> claim "must indulge a strong presumption

that counsel's conduct falls within the wide range of reasonable professional

assistance," keeping in mind that "[t]here are countless ways to provide effective

assistance in any given case" and that "[e]ven the best criminal defense attorneys

would not defend a particular client in the same way." <u>Id</u>. at 689. Decisions

concerning investigation and strategy, including the arguments to stress, witnesses

to call, motions to make, and lines of inquiry to pursue, "fall squarely within the

ambit of trial strategy and, if reasonably made, cannot support an ineffective

assistance claim." <u>United States v. Smith</u>, 198 F.3d 377, 386 (2d Cir.1999)

(quoting <u>United States v. Eisen</u>, 974 F.2d 246, 265 (2d Cir.1992). Finally, although

the <u>Strickland</u> standard was formulated in response to a claim of ineffective

8

assistance of trial counsel, it also applies to claims of ineffective assistance of appellate counsel. See Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir.1994).

### 1. Constructive Amendment

"A constructive amendment occurs when the government's presentation of evidence and the district court's jury instructions combine to 'modify essential elements of the offense charged to the point that there is a substantial likelihood that the defendant may have been convicted of an offense other than the one charged by the grand jury.'" United States v. Vebeliunas, 76 F.3d 1283, 1290 (2d Cir.1996) (quoting United States v. Clemente, 22 F.3d 477, 482 (2d Cir.1994)). When a constructive amendment affects an essential element of the charged offense, it is a per se violation of the grand jury provision of the Fifth Amendment and requires reversal without a showing of prejudice. See United States v. Coyne, 4 F.3d 100, 112 (2d Cir.1993).

### 2. The Indictment In Petitioner's Case

Relying on Stirone, Petitioner argues that other conspirators were indicted for the same underlying crime, but on a theory different than the one employed in Petitioner's case. Petitioner compares (1) the indictment in his case, United States v. Amato, Superseding Indictment No. 99-CR-536-(S-3) (SJ), which alleges conspiracy and attempt "to obstruct, delay[] and affect commerce, and the movement of articles and commodities in commerce, by robbery, in that they

9

attempted to commit a robbery of the residents of 2309 Royce Street, Brooklyn,

New York," but does not mention whether the home contained the proceeds from a

diamond or tool business involving interstate commerce, with (2) another

indictment bringing charges in connection with the same robbery, <u>United States v.</u>

<u>Tabbita</u>, Superseding Information No. 95-CR-754-(S-9) (SJ), which alleges

conspiracy "to obstruct, delay and affect commerce, by robbery, in that they

conspired to commit an armed robbery of a diamond merchant, who retained the

proceeds from his sales within his residence in the Mill Basin section of Brooklyn,

New York." Petitioner argues that the evidence presented at trial did not comport

with the evidence presented to the grand jury, because the indictment in his case

does not specify whether the defendants believed the residence at 2309 Royce

Street contained the proceeds from a diamond or tool business engaged in interstate

commerce, but such evidence was presented at trial.

### 3. The Nexus To Interstate Commerce

On direct review, the Second Circuit found that the government established

a sufficient nexus to interstate commerce at Petitioner's trial by showing that:

> [A]t least three of the coconspirators, Iacobelli, Tabbita, and LaRussa,
> believed the residents of the targeted home were diamond merchants and
> kept at least $1 million in cash, and possibly diamonds, in the home. *Tr.* at
> 542, 951, 1005, 1116. Although there was no direct evidence that
> defendants Kolar and Guidice also believed the residents to be diamond
> merchants, common sense would suggest, and a jury could reasonably find,
> that Tabbita would share the basis for his belief that there was over $1
> million in cash in the home with those he was trying to recruit for the
> robbery. It also seems reasonable to infer that when Iacobelli and LaRussa

10

> asked Guidice if he would be interested in taking over the robbery, after
> Tabbita decided he no longer wanted to participate, they would have
> informed Guidice of the same details they had originally provided to
> Tabbita (i.e., that the residents were diamond merchants and kept at least $1
> million in cash in the house).

Amato, 2002 WL 360735, at *3. The Second Circuit also found that even if

Petitioner did not know that his crime involved interstate commerce, this would not

insulate him from being convicted under the Hobbs Act, because at least three of

Petitioner's co-defendants believed the home contained the proceeds of a diamond

business involving interstate commerce. See id. at *4 (citing United States v. Rosa,

17 F.3d 1531, 1546 (2d Cir.), cert. denied, 513 U.S. 879 (holding that interstate

commerce nexus could be "satisfied by the belief of at least one conspirator that the

goods had traveled interstate" and concluding that "we need not explore the

evidence of the other defendants' awareness that their crime was federal."); United

States v. Feola, 420 U.S. 671, 692 (1975) ("[I]t is clear that one may be guilty as a

conspirator for acts the precise details of which one does not know at the time of

the agreement.")).

   The Second Circuit further held that the government presented sufficient

evidence from which a jury could find a potential effect on interstate commerce had

the defendants succeeded in robbing the business proceeds from the residence. See

Amato, 2002 WL 360735, at *4-5. Although the government did not show at trial

that the purported diamond business, which did not actually exist, had an effect on

11

interstate commerce, it did offer evidence that two tool businesses, the proceeds of

which were often stored in the home that was the target of the robbery, were both

engaged in interstate commerce. See id.; see also Trial Transcript ("Tr.") at 402,

1140-41, 1142-47. Based on this evidence, the jury could have reasonably found a

potential effect on interstate commerce had the robbery been successful.[3] See

Amato, 2002 WL 360735, at *5. This finding comports with well established law

stating that "the burden of proving a nexus to interstate commerce is minimal,"

United States v. Elias, 285 F.3d 183, 188 (2d Cir.2002), and that "[t]he

jurisdictional requirement of the Hobbs Act may be satisfied by a showing of a

very slight effect on interstate commerce." Id. (quoting United States v. Angelilli,

660 F.2d 23, 35 (2d Cir.1981)).

---

[3] In any event, this Circuit does not recognize impossibility as a defense to conspiracy and attempt charges generally, see United States v. Howard, 998 F.2d 42, 51 (2d Cir.1993), and specifically has held that factual impossibility is not a jurisdictional defense to Hobbs Act conspiracy or attempt charges, see United States v. Medina, 74 F.3d 413, 418 (2d Cir.1996) (in affirming conviction for attempted robbery under the Hobbs Act, court observed that "[m]any pre-existing circumstances may doom a conspiracy, without rendering the conspirators any less culpable for their acts."); Clemente, 22 F.3d at 480-81. If facts exist which, unbeknownst to the defendants, make an actual effect on interstate commerce impossible, defendants are still liable under Section 1951 if the government proves that, had the factual circumstances been as the defendants believed, there would probably have been an effect on interstate commerce. See Medina, 74 F.3d at 418; Clemente, 22 F.3d at 480-81. The government clearly met its burden in this case.

12

### 4. The Government Did Not Constructively Amend The Indictment

Having established that there was a sufficient nexus to interstate commerce, the question remains whether the evidence presented at trial constructively amended the indictment, in violation of <u>Stirone</u>. In Petitioner's case, the indictment did not allege a specific effect on interstate commerce, but rather alleges the defendants "attempted to commit a robbery of the residents of 2309 Royce Street, Brooklyn, New York." <u>United States v. Amato</u>, Superseding Indictment No. 99-CR-536-(S-3) (SJ). At trial, however, the government proved a specific effect on interstate commerce by showing that at least three co-defendants believed the residence at 2309 Royce Street contained proceeds from a diamond business engaged in interstate commerce. The government also established that a successful robbery of that residence could have affected interstate commerce because proceeds from two tool businesses engaged in interstate commerce were in fact maintained inside the residence. Where the possible bases for conviction are narrowed by the evidence presented at trial, rather than broadened, no <u>Stirone</u> violation occurs. <u>See</u> <u>United States v. Zingaro</u>, 858 F.2d 94, 99 (2d Cir.1988); <u>see</u> <u>also</u> <u>Pipola v. United States</u>, No. 97 CV 4988, 1999 WL 993718, at *6 (E.D.N.Y. October 19, 1999) (Johnson, J.) (holding that where indictment gave no description of the manner in which interstate commerce was affected, the government remained free to prove that interstate commerce was affected by evidence presented at trial); <u>cf.</u> <u>Stirone</u>,

13

361 U.S. at 217 (holding that where an indictment does allege a particular type of effect on interstate commerce, that specific effect must be proven by the government). Here, because the government narrowed, rather than broadened, the possible bases for conviction at trial by establishing the specific manner in which interstate commerce would have been affected by a successful robbery of the residence at 2309 Royce Street, it did not constructively amend the indictment.

### 5. Counsel Was Not Ineffective For Failing To Raise Petitioner's Meritless Stirone Claim

Because the Court finds that there is no merit to Petitioner's Stirone claim, Corozzo and Shevitz cannot be held ineffective for failing to raise the claim. See Sanchez v. United States, No. 01 CR 908, 2005 WL 1005159, *3 (S.D.N.Y. Apr. 30, 2005) ("[F]ailure to assert a baseless claim does not fall below an objective standard of reasonableness nor prejudice the defendant.").

### C. Petitioner's Claim Is Procedurally Barred

Having failed to establish cause and prejudice for failing to raise his Stirone claim regarding the interstate commerce nexus on direct appeal, Petitioner's claim is procedurally barred. Since Petitioner's Stirone claim is procedurally barred, his request for the grand jury testimony of Agent Breslin, and other unnamed agents, in connection with this claim is denied. Furthermore, the Court denies Petitioner's request for leave to amend his § 2255 petition to include an ineffective assistance

14

of counsel claim in an attempt to avoid procedurally defaulting his <u>Stirone</u> claim, because amendment would be futile.[4]

## II. Petitioner Claims He Received Ineffective Assistance of Counsel Due To A Conflict of Interest

Petitioner alleges that Corozzo was ineffective because he suffered from a conflict of interest that adversely affected his representation. "The right to counsel under the Sixth Amendment entails 'a correlative right to representation that is free from conflicts of interest.'" <u>United States v. Levy</u>, 25 F.3d 146, 152 (2d Cir.1994) (quoting <u>Wood v. Georgia</u>, 450 U.S. 261, 271 (1981)). A defendant will have suffered ineffective assistance of counsel in violation of his Sixth Amendment rights if his attorney has a per se conflict, an actual conflict that adversely affects the attorney's performance, or a potential conflict that results in prejudice to the defendant. <u>See Levy</u>, 25 F.3d at 152; <u>Winkler v. Keane</u>, 7 F.3d 304, 307 (2d Cir.1993); <u>Armienti v. United States</u>, 234 F.3d 820, 823-24 (2d Cir.2000).

"Per se conflicts are limited to situations where trial counsel is not authorized to practice law . . . or is implicated in the very crime for which his or her

---

[4] In his Reply, Petitioner also asserts a claim for ineffective assistance of trial counsel based on Corozzo's failure to obtain Agent Breslin's, and other unnamed agents', grand jury testimony following their testimony at trial. (Pet. Rep. at 12.) Petitioner argues that had Corozzo obtained this grand jury testimony, he could have used it to support Petitioner's <u>Stirone</u> claim. (<u>Id</u>.) Because the <u>Stirone</u> claim is meritless, Petitioner's ineffective assistance of counsel claim based on Corozzo's failure to obtain grand jury testimony that he could have used to support Petitioner's meritless <u>Stirone</u> claim necessarily fails.

15

client is on trial." Armienti, 234 F.3d at 823. For actual conflict claims, a defendant must establish the existence of an actual conflict, and then show that the conflict adversely affected defense counsel's performance. See Mickens v. Taylor, 535 U.S. 162, 171 (2002); Armienti v. United States, 313 F.3d 807, 811 (2d Cir.2002). An actual conflict between a lawyer and his client exists "when, during the course of the representation, the attorney's and defendant's interests 'diverge with respect to a material factual or legal issue or to a course of action.'" Armienti, 234 F.3d at 824 (quoting Winkler, 7 F.3d 304, 307 (2d Cir.1993)). If the defendant establishes that an actual conflict exists, "he need not prove prejudice, but simply that a 'lapse of representation' resulted from the conflict." United States v. Malpiedi, 62 F.3d 465, 469 (2d Cir.1995) (quoting United States v. Iorizzo, 786 F.2d 52, 58 (2d Cir.1986)) (citations omitted). That is, the defendant must "demonstrate that some 'plausible alternative defense strategy or tactic might have been pursued,' and that the 'alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests.'" Levy, 25 F.3d at 157 (quoting Winkler, 7 F.3d at 309). Finally, where a defendant can show only potential conflict, a showing that a lapse of representation occurred is not sufficient; the defendant must show that he has been prejudiced by counsel's actions. Winkler, 7 F.3d at 307 (citing Strickland, 466 U.S. 668).

P-049

## A.    Background

Petitioner alleges that Corozzo told him after trial that he "may have a

conflict of interest in his representation of [Petitioner]." (Pet.'s Br. 13.)  Petitioner

alleges that upon further questioning, Corozzo did not provide any additional

information regarding this alleged conflict.  On the basis of this statement from

Corozzo, Petitioner requests that this Court issue an order disclosing the nature of

the conflict, arguing that "while it is not submitted that Mr. Corozzo had any

connection to the [crimes for which Petitioner was convicted], it is believed that the

organized crime aspect of this case could present a [United States v. Cancilla, 725

F.2d 867 (2d Cir.1984)] and/or [United States v. Curcio, 680 F.2d 881 (2d

Cir.1982)] conflict."[5] (Id. at 14.)

Petitioner also asks the Court to order the government to provide

information to Petitioner regarding all conflict hearings held as to Corozzo since

2000, because Petitioner "personally has information that numerous individuals had

Curcio hearings as to [Corozzo's] conflict of interest beginning in at least March or

April of 2000." (Pet.'s Rep. 11.)  Petitioner alleges that a Curcio hearing was held

---

[5] In Cancilla, the Second Circuit held that a defendant's representation by
trial counsel who, unknown to him, had himself engaged in criminal activity related
to conduct for which defendant was convicted, created a conflict of interest that
violated the defendant's right to counsel.  In Curcio, two brothers wished to retain
the same counsel at a criminal trial where they were charged as co-defendants.
After the district court removed the brothers' attorney, the Second Circuit reversed,
stating that they saw "no reason why either [defendant] could not make a knowing
and intelligent election to be represented by [their attorney] despite the existence of
a conflict of interest." Curcio, 680 F.2d at 885.

17

in connection with the trials of other criminal defendants alleged to be members of the Gambino Organized Crime Family ("OCF") who were represented by Corozzo, and therefore such a hearing should have been held in connection with Petitioner's trial. Specifically, "Petitioner, alleged to be a soldier in the Gambino Family by the government, would have been in a conflicted attorney client relationship with Corozzo, given the allegations publicized in the printed media concerning [Corozzo's] closest kin." (Id. at 12.)

## B. Recent Cases Examining Corozzo Conflict Of Interest Claims

The Court is aware of two fairly recent cases for which a conflict of interest hearing was held in connection with Corozzo's representation of alleged members of the Gambino OCF. In United States v. Yannotti, 358 F.Supp.2d 289 (S.D.N.Y.2004), Judge Scheindlin granted the government's motion to disqualify Corozzo from representing a member of the Gambino OCF in a RICO trial. Judge Scheindlin held that the collective weight of three of the alleged conflicts in that case, (1) Corozzo's relationship with his uncle "Nicky" Corozzo, an alleged longtime Gambino OCF member, (2) Corozzo's alleged involvement in the shooting incident which would be the subject of trial testimony, and (3) Corozzo's representation of a "material witness against his current client," was "sufficiently severe that no rational defendant would knowingly or intelligently desire Corozzo's

18

representation under these circumstances," and accordingly she disqualified Corozzo from continuing his representation. Id. at 297.

In United States v. Pizzonia, 415 F.Supp.2d 168 (E.D.N.Y.2006), however, Judge Weinstein, who discussed Judge Scheindlin's prior decision in Yannotti, denied the government's motion to disqualify Corozzo from representing another member of the Gambino OCF in a RICO trial. Judge Weinstein held that although Corozzo had previously represented one government witness and the co-defendant of another cooperator, these conflicts were waivable. Specifically, with respect to one of the cooperator witnesses, the court determined that Corozzo merely performed investigative work as a personal favor, but never represented him in a legal capacity, and thus would not breach any ethical duties by cross-examining him or impeaching his credibility. Pizzonia, 415 F.Supp.2d at 179-80. Regarding a second cooperator, who was a co-defendant with a former client, Judge Weinstein found that Corozzo never undertook a joint defense with this witness. As to the government's claim that a conflict existed with respect to Corozzo's current and prior representation of an unindicted coconspirator, Judge Weinstein found that Corozzo's representation in that matter was "unrelated to defendant's prosecution" and that, although the defendant did "possibly reduce the number of defense strategies [available to him] by continuing to retain defense counsel," he was aware of this fact and could validly waive any conflict that existed. Id. at 181-2.

19

In <u>Pizzonia</u>, the government also alleged that Corozzo had a role as a co-conspirator in the Gambino OCF, and proffered that it had taped conversations in which Corozzo's father told Gambino OCF members he wanted his son inducted into the OCF, and Corozzo's representation of numerous defendants alleged to be participants in organized crime demonstrated his status as a coconspirator. Judge Weinstein found this argument unavailing, holding that it did not prove Corozzo's co-conspirator status, the testimony would not be relevant to the trial, and no conflict existed. <u>Id</u>. at 182-3.

Finally, with respect to Corozzo's alleged familial loyalties to the Gambino OCF, Judge Weinstein found the conflicts waivable. <u>Id</u>. at 184-5. He distinguished <u>Yannotti</u> on the ground that in <u>Yannotti</u>, the defendant allegedly reported directly to Corozzo's uncle, whereas this was not the case in <u>Pizzonia</u>. Moreover, Judge Weinstein emphasized that Judge Scheindlin found Corozzo's conflicts unwaivable when viewed in combination with his alleged involvement in a shooting that would be the subject of trial testimony, and his prior representation of a cooperating witness who would provide material testimony against his client. In sum, Judge Weinstein found that the multiple conflicts alleged in <u>Pizzonia</u> did not mandate disqualification of Corozzo.

The outcomes in <u>Yannotti</u> and <u>Pizzonia</u> underscore that an alleged conflict claim must be evaluated on a case-by-case basis, after evaluating the totality of the

20

circumstances. <u>See</u> <u>United States v. Liszewski</u>, No. 06 CR 130, 2006 WL 2376382, at *8 (E.D.N.Y. August 16, 2006) (reviewing the decisions in <u>Yannotti</u> and <u>Pizzonia</u> and finding that there is a "vast gray area that exists in this area of law between serious conflicts which lead to per se ineffective assistance of counsel and lesser potential conflicts which may, at some point, compromise the integrity of the trial process.").

### C. Petitioner Is Not Entitled To Relief Based On His Conflict Of Interest Claim

Turning to this case, the Court concludes that Petitioner is not entitled to relief based on Corozzo's alleged conflict of interest, nor is he entitled to the additional documents he requests in support of his claim. Petitioner offers no factual support for his claim that a conflict of interest existed concerning his representation, other than a single alleged statement made by Corozzo several years after Petitioner had already been sentenced. Furthermore, unlike either <u>Yannotti</u> or <u>Pizzonia</u>, Petitioner concedes that Corozzo had no involvement whatsoever in the crimes for which he was convicted. (Pet.'s Br. 14.) Petitioner also fails to allege that Corozzo was otherwise materially connected to any persons – whether witnesses, codefendants, or others – involved in Petitioner's trial. Moreover, in his declaration submitted to this Court, Corozzo clarified that he had never informed

21

Petitioner that he was operating under a conflict of interest at the time he was

representing Petitioner at trial. Rather, Corozzo explains:

> 16. Subsequent to the trial, sometime in 2003, I visited Mr. Guidice in
> prison. At that time, I informed Mr. Guidice that I recently became aware
> that the government claimed that I was the subject of a Grand Jury
> investigation during the time that I represented Mr. Guidice.

> 17. While I never informed Mr. Guidice that I operated under a conflict of
> interest during my representation of him, I did state that the government has
> repeatedly informed my other clients that as a result of being the subject of
> Grand Jury investigations, a waivable conflict of interest existed.

(Corozzo Decl. at ¶¶ 16-17.) Thus, contrary to Petitioner's claim, Corozzo never

actually informed Petitioner that a conflict existed that may have affected his

representation of Petitioner. Finally, this Court conducted an *in camera* review of

the sealed order concerning the alleged conflict involving Corozzo, and the Court

concludes that nothing in the Order supports Petitioner's claim.

Petitioner's claim that Corozzo provided ineffective assistance of counsel

due to a conflict of interest is unavailing. Because his claim is denied, Petitioner's

related requests for a Court order disclosing the nature of Corozzo's alleged

conflict, and for the government to provide information regarding all conflict

hearings held as to Corozzo since 2000, are also denied.

### III. Petitioner Raises Two Claims Relating To His Parole Status At The Time Of Sentencing

Petitioner complains that he was misled by his parole officer into believing that no parole violation had been filed in connection with his prior federal convictions, and that this purported misinformation prejudiced him at sentencing. Petitioner also claims that his counsel rendered ineffective assistance by failing to independently investigate his parole status and raise this issue at sentencing. Both claims are meritless.

#### A. Background

In 1985, Petitioner received an aggregate 9-year prison sentence and an aggregate 5-year special parole term for federal narcotics convictions in the Eastern District of New York. On April 13, 1990, Petitioner was released on parole, and on October 13, 1994, he began serving his aggregate 5-year special parole, subject to special parole supervision until October 12, 1999. Prior to the expiration of his special parole term, however, by letter dated June 25, 1999, Petitioner's parole officer, Anthony Castellano ("Castellano"), informed the U.S. Parole Commission ("Commission") that Petitioner had been arrested and charged with robbery conspiracy and use of a firearm. Castellano requested that the Commission issue a violator warrant based upon Petitioner's latest arrest, but the Commission did not

23

issue a warrant until September 1, 1999. The warrant was also to be held in abeyance pending the outcome of the new criminal proceedings.

Following Petitioner's trial and sentencing on the new charges, by letter dated March 19, 2001, Castellano reported to the Commission that Petitioner had received a 123-month sentence for the convictions. The Commission then supplemented the warrant and requested that it be lodged as a detainer with the Bureau of Prisons. The Commission also initiated a dispositional review of the warrant, informing Petitioner of his right to submit information to the Commission for an "on the record" review of the case to determine whether the warrant should remain as a detainer.

By letter dated July 26, 2001, Shevitz submitted a statement to the Commission regarding the warrant and the charges. The Commission reviewed the warrant and, on September 6, 2002, the Commission ordered that the warrant remain as a detainer, to be executed after Petitioner completes the 123-month sentence he is currently serving. At that time, Petitioner will receive a revocation hearing, as set forth in 28 C.F.R. §§ 2.49, 2.50.

### B. Petitioner Claims That Castellano Misled Petitioner Regarding His Parole Status

Petitioner claims that Castellano misled Petitioner and his counsel by incorrectly informing them that the time for a parole violation had expired, that

nothing had been filed by the Commission in connection with Petitioner's alleged

parole violation, and that nothing would be filed. Petitioner alleges that Castellano

did not sufficiently investigate the Commission's intentions before making this

representation to him. It is well-established that a collateral attack on a final

judgment in a federal criminal case is generally available under § 2255 only for a

constitutional error, a lack of jurisdiction in the sentencing court, or an error of law

or fact that constitutes "a fundamental defect which inherently results in a complete

miscarriage of justice." Bokun, 73 F.3d at 12 (quoting Hill v. United States, 368

U.S. 424, 428 (1962)). Petitioner cites no case law establishing that Castellano's

alleged errors give rise to a cognizable habeas claim, nor has this Court located any

basis for such a claim on collateral review.[6] Accordingly, this claim is denied.


### C. Petitioner Claims That Corozzo Was Ineffective For Failing To Investigate And Discuss Petitioner's Parole Status At Sentencing

Alternatively, Petitioner claims his sentencing counsel, Corozzo, was

ineffective for failing to investigate the existence of a parole violation warrant. He

also alleges that Corozzo provided ineffective assistance by failing to discuss

---

[6] To the extent that Petitioner is claiming he was unlawfully misled by
Castellano, at minimum Petitioner would have to demonstrate that Castellano
engaged in affirmative misconduct in order to possibly raise a claim for habeas
relief. See, e.g., Azizi v. Thornburgh, 908 F.2d 1130, 1136 (2d Cir.1990) (alien
who relied upon erroneous issuance of visa, and who did not appeal deportation
order, not entitled to estoppel because only negligence shown, but not affirmative
misconduct). Petitioner makes no such allegations.

25

Petitioner's parole status at sentencing. Specifically, Petitioner alleges that Corozzo should have made this Court aware that Petitioner might suffer additional adverse consequences following the completion of his sentence from this Court, in the form of an additional parole violator term.

In order to establish a meritorious <u>Strickland</u> claim, Petitioner must demonstrate that counsel's representation fell below an objective standard of reasonableness, and that counsel's performance prejudiced his defense. Here, Corozzo submitted an affidavit stating that, at Petitioner's request, he contacted Castellano to determine whether a parole violation had been filed as a result of his arrest or pending trial in this case. (Corozzo Aff. at ¶ 5.) Subsequent to the expiration of Petitioner's parole, Castellano informed Corozzo that no violation had been filed. (<u>Id</u>. at ¶ 6.) Corozzo's reliance on the information provided by Castellano did not fall below an objective standard of reasonableness. On the contrary, Corozzo's decision to ask Castellano, Petitioner's parole officer, about Petitioner's parole status was an eminently reasonable course of conduct. Therefore, Petitioner cannot satisfy the first prong of his ineffective assistance claim, and his claim fails on this ground alone.

Even assuming Corozzo's failure to independently investigate Petitioner's parole status after discussing the issue with Castellano fell below reasonable standards, Petitioner cannot establish that Corozzo's errors prejudiced Petitioner at

26

sentencing. To support his claim, Petitioner almost exclusively relies on U.S.S.G.

§ 5G1.3 comment Note 6, which states:

> If the defendant was on federal or state probation, parole, or supervised release at the time of the instant offense, and has had such probation, parole, or supervised release revoked, the sentence for the instant offense should be imposed to run consecutively to the term imposed for the violation of probation, parole, or supervised release in order to provide an incremental penalty for the violation of probation, parole, or supervised release.

Thus, where a defendant has had his probation, parole, or supervised release revoked already, under Note 6 the sentencing court "should" impose a consecutive sentence. Based on this language, Petitioner suggests that because his parole had not been revoked as of the date of his sentencing, this Court would not have been *required* to impose a consecutive sentence under Note 6. Therefore, Petitioner argues that under § 5G1.3, this Court (1) could have considered the possibility of Petitioner serving another sentence if he is found to have violated his parole at sentencing, and (2) could have imposed a concurrent sentence in light of this possibility.[7]

---

[7] Although not relevant to the resolution of Petitioner's claim, Petitioner misstates the law regarding Note 6. Under Note 6, district courts "should" impose a sentence for the instant offense to run consecutively to any term imposed for a violation of state probation, parole, or supervised release. However, imposition of a consecutive sentence is not required, as courts "retain the discretion under Note 6 to sentence a defendant concurrently or partially concurrently." United States v. Fermin, 252 F.3d 102, 112 n.19 (2d Cir.2001) (quoting United States v. Maria, 186 F.3d 65, 72 (2d Cir.1999)). Therefore, even if the Commission already concluded that Petitioner violated his parole at the time of Petitioner's sentencing, the Court still may have sentenced Petitioner to a concurrent or partially concurrent sentence.

27

To be clear, Petitioner does not allege any error in the calculation of his offense level or criminal history at the time of his sentencing. Moreover, Petitioner concedes that he had not been found to have violated his parole at the time of his sentencing before this Court. Further, it is far from certain that he will be sentenced by the Commission for a parole violation once he completes his current sentence.[8] Instead, petitioner's claim is premised solely on equitable arguments, which suggest that this Court might have issued a lighter sentence had it known that the Commission might decide to impose a future sentence on Petitioner, if the Commission later finds that Petitioner violated his parole. There is simply no basis for granting § 2255 relief based on such speculation, particularly given that Petitioner was sentenced within the correct Guidelines range. See Bokun, 73 F.3d at 12 (holding that § 2255 cannot be a vehicle for reducing a sentence where "there was no fundamental error of fact that would render [defendant's] sentencing proceeding so irregular and invalid that relief under § 2255 would be appropriate" (citation and internal quotation marks omitted)); see also Elgabrowny v. United

---

[8] The Commission's violation warrant is currently lodged only as a detainer against Petitioner. After Petitioner serves his current sentence, the warrant will be executed, and the Commission will then determine what sentence, if any, will issue. The Commission may not find Petitioner in violation, or it may decide not to impose any additional sentence for a violation. This Court has no role in determining the Commission's future potential sentencing of Petitioner. See Moddy v. Daggett, 429 U.S. 78, 87-88 (1976); see also Heath v. U.S. Parole Comm'n, 788 F.2d 85, 92 (2d Cir.1986) (sentencing judge does not have authority to order prisoner's violator sentence to run consecutive or concurrent to new federal sentence); accord D'Amato v. U.S. Parole Comm'n, 837 F.2d 72 (2d Cir.1988) (state sentence).

28

States, No. 93 CR 181, 2003 WL 22416167, at *11 (S.D.N.Y. October 22, 2003) (errors in applying the Guidelines do not qualify for § 2255 relief) (citing Werber v. United States, 149 F.3d 172, 177 n.4 (2d Cir.1998); Piervinanzi v. United States, 151 F.Supp.2d 266, 271 (S.D.N.Y.2001) (a sentence within the Guidelines cannot be a complete miscarriage of justice). Because Petitioner cannot establish a reasonable probability that but for counsel's deficient performance, the outcome of his sentencing would have been different, Petitioner fails to establish that he suffered prejudice from the alleged deficient conduct of counsel. Accordingly, this ineffective assistance of counsel claim fails.

**IV.    Petitioner Claims He is Innocent Of The 18 U.S.C. §§ 924(c), 2, Charge, And The Government's Theory At Trial Regarding Use Of A Firearm Amounted To A Constructive Amendment Of The Indictment**

Petitioner claims he is innocent of charge three of the indictment, use of a firearm in violation of 18 U.S.C. §§ 924(c), 2, because he did not take the affirmative step which would violate 18 U.S.C. § 2, the aiding and abetting statute. Petitioner also claims that the government's theory as to his § 924(c) liability at trial was conspiracy, rather than aiding and abetting as alleged in the indictment, and that proceeding on a conspiracy theory amounted to a constructive amendment of the indictment under Stirone. Each of these claims is unavailing.

29

## A.    Petitioner Claims He Is Innocent Of Aiding And Abetting

Under the terms of 18 U.S.C. § 2(a), "[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal." To be convicted of aiding and abetting, the defendant must have taken some conscious action that furthered the commission of the underlying crime. See United States v. Dickerson, 508 F.2d 1216, 1218 (2d Cir.1975). The government must therefore prove the underlying crime was committed by someone other than the defendant, and that the defendant himself acted with the specific intent of advancing the commission of the underlying crime. To show specific intent, the government must prove the defendant knew of the proposed crime and had an interest in furthering it. See United States v. Wiley, 846 F.2d 150, 154 (2d Cir.1988). Thus, to prove the act and intent elements for aiding and abetting the commission of a crime, the evidence must demonstrate that the defendant joined and shared in the underlying criminal endeavor and that his efforts contributed to its success. See United States v. Zambrano, 776 F.2d 1091, 1097 (2d Cir.1985).

Petitioner claims he did not take the affirmative step which would violate 18 U.S.C. § 2, the aiding and abetting statute. However, this claim already was raised and denied on direct appeal, and Petitioner fails to cite, nor has this Court found, any intervening change in the law that would have exonerated Petitioner had

30

it been in force when the conviction was affirmed on appeal. See 2001 WL

34284354, at *65 (Petitioner's Brief on direct appeal, arguing Petitioner not liable

for firearm charge under aiding and abetting or Medina[9] theory); Amato, 2002 WL

360735, at *5 (considering all of Petitioner's arguments not otherwise discussed,

including Medina charge, and affirming the judgment of the district court).

Therefore, Petitioner is procedurally barred from bringing this claim.


**B.      Petitioner Claims There Was A Constructive Amendment
         Regarding The Section 924(c) Charge**

Perhaps recognizing that he would be procedurally barred from re-litigating

his aiding and abetting claim, Petitioner has repackaged it as a Stirone claim,

arguing that the government's theory as to his § 924(c) liability at trial was

conspiracy, whereas the indictment alleged aiding and abetting, and that this

constructive amendment of the indictment violated Stirone.

Although this claim was not presented at trial or appeal, Petitioner again

seeks to avoid the procedural bar on this claim by arguing that Corozzo and Shevitz

were ineffective for failing to raise the question of whether the government

constructively amended the indictment in connection with the § 924(c) charge.

Furthermore, as with his Stirone claim regarding the interstate commerce nexus,

Petitioner did not plead in his § 2255 petition that Corozzo and Shevitz were

---

[9] United States v. Medina, 74 F.3d 413 (2d Cir.1996).

31

ineffective for failing to raise this Stirone claim regarding § 924(c) liability.

Therefore, in his Reply he requested leave to amend his petition to include an

ineffective assistance of counsel claim with this Stirone claim as to the § 924(c)

charge, in order to avoid the procedural bar. (Pet. Rep. at 1.)

In support of his Stirone claim regarding § 924(c) liability, Petitioner

grossly misstates the prosecution's legal theory at trial and mischaracterizes the

record, ignoring the significant incriminatory evidence proving his § 924(c)

liability under an aiding and abetting theory. Petitioner does concede that a firearm

was used in the attempted robbery. (Pet. Br. at 22.) However, Petitioner argues

that his alleged knowledge that his co-defendants intended to use guns to commit

the robbery is an insufficient basis to find aider and abettor liability. While

Petitioner's statement of the law is correct, his summary of the trial testimony

against him is not. Contrary to his profession of ignorance, the evidence clearly

showed that Petitioner not only knew his co-defendants intended to use guns in the

robbery, but Petitioner also assisted in providing firearms and protection for use in

a possible exchange of fire during the robbery. Specifically, trial testimony

established that Petitioner supplied two bulletproof vests to Anthony Tabbita, a

cooperating witness involved in the planning of the robbery, for the "score," which

was commonly understood in Gambino OCF circles to mean an armed robbery.

(Tr. at 550, 957, 1172, 1236-37.) Furthermore, another cooperating witness,

32

Florian Stoica, testified that on the morning of the March attempt, Petitioner and another cohort identified only as "Nick" placed several automatic firearms into a stolen van that would serve as the drop-off and getaway vehicle for the robbery. (Id. at 100, 102.) In addition to the firearms, Petitioner and "Nick" picked up a "22 caliber silencer" for the robbery. (Id. at 102.) Petitioner and "Nick" were to either poison or shoot the dogs following the break-in, and to restrain the victims. (Id. at 104.) Petitioner thus had a key role in ensuring that at least one firearm equipped with a silencer would be carried and potentially used during the robbery, thus violating 18 U.S.C. §§ 924(c), 2. In short, the government established Petitioner's aider and abettor liability for use of a firearm at trial, and there was no constructive amendment of the indictment.[10]

After reviewing the trial and appellate record, the Court cannot find that Corozzo's and Shevitz's failure to raise a meritless Stirone claim concerning § 924(c) aider and abettor liability constituted ineffective assistance under Strickland. Having failed to establish cause and prejudice for failing to raise this Stirone claim on direct appeal, Petitioner is procedurally barred from now raising the claim. Therefore, Petitioner's request for leave to amend his petition to include an

---

[10] Petitioner argues that "even the district judge seemed to exhibit some confusion between the elements of aiding which were required to be proven and a § 924(c) conspiracy, which was the actual theory of the prosecution." (Pet. Br. at 18-19.) This contention, which is based on a single question the Court directed to Petitioner's attorney during the charge conference, is completely without merit. More importantly, the Court's aider and abettor jury charge was legally sound. (Tr. at 1991-94.)

33

ineffective assistance of counsel claim with this <u>Stirone</u> claim in order to avoid procedural default is denied, because amendment would be futile.

## V.     Petitioner's Remaining Ineffective Assistance Of Counsel Claims

Petitioner claims Corozzo rendered ineffective assistance in connection with three other aspects of his trial representation. As stated above, under <u>Strickland</u> and its progeny, a defendant advancing an ineffective assistance claim faces a heavy burden, and there is a strong presumption that counsel's conduct fell within the range of reasonable professional assistance. Petitioner's remaining ineffective assistance of counsel claims clearly do not meet this burden.

### A.     Petitioner Claims Corozzo Failed To Advise Him That The Right To Testify Was His Decision

Petitioner complains that counsel was ineffective for insisting that Petitioner not testify at trial, because "Petitioner would have been his own best defense witness," (Pet. Br. at 24), and "could have testified that he did not commit the robbery, that he did not buy a weapon from Tabbita, and that he did not know why Tabbita needed bullet proof vests." (Pet. Br. at 25.)

As Petitioner correctly notes, the decision whether or not to testify is a "personal right," and therefore a defendant "must be allowed to testify if he so desires, regardless of strategic considerations that his lawyer concludes weigh

34

against such a decision." Brown v. Artuz, 124 F.3d 73, 77 (2d Cir.1997). A defendant's claim that he was denied the right to testify is considered a "component" of his ineffective assistance of counsel claim, and is therefore reviewed under the two-part Strickland standard. See id. at 79. Accordingly, courts may presume, unless the defendant can overcome the presumption, that defense counsel was effective and did not fail to advise the defendant of his right to testify. See Strickland, 466 U.S. at 689.

Here, Petitioner offers nothing beyond his own self-serving affidavit in support of his claim that he was never informed of his right to testify. Petitioner's affidavit states:

> I wanted to testify at my trial. I always believed I had an excellent chance of being acquitted because I am innocent of the charges. I could have testified that I did not buy a gun from Anthony Tabbita, and that I did not know why Tabbita wanted/purchased bullet-proof vests. The victim of the crime did not identify me as a participant, and the only witnesses against me had more severe criminal histories than I do.

(Guidice Aff. at ¶ 4.) First, it is far from clear that Petitioner's affidavit, read in totality, even alleges that his trial counsel failed adequately to consult and inform him about his right to testify and the progress of his case. Indeed, Petitioner does not actually allege that Corozzo failed to advise him of his right to ultimately decide whether or not he should testify. The affidavit merely states Petitioner "wanted to testify." Petitioner also fails to present an affirmation from his trial

35

counsel to support his claim. On the contrary, Corozzo's affidavit undermines Petitioner's claim:

> 8. Prior to and during his trial, I discussed with [Petitioner] the possibility of his testifying.

> 9. I advised [Petitioner] that I thought it could be detrimental to his defense if he testified.

(Corozzo Aff. at ¶¶ 8-9.) Thus, Corozzo clearly discussed with Petitioner the possibility of testifying. When viewed in totality, Petitioner's equivocal assertions, particularly when viewed in light of Corozzo's affidavit, fail to overcome the presumption that counsel properly advised him of his right to testify. See Frederick v. United States, No. 01 CV 7826, 2005 WL 2175904, at *16 (E.D.N.Y. September 08, 2005) (Johnson, J.) (citing DeLuca v. Lord, 858 F.Supp. 1330, 1360 (S.D.N.Y.1994).

Even assuming *arguendo* that Corozzo failed to advise Petitioner of his right to testify, Strickland requires that the defendant also demonstrate prejudice. The case against Petitioner was overwhelming, and Petitioner has not indicated the manner in which his proposed testimony would have led to his acquittal, other than by suggesting that the jury would have found him more credible than the numerous witnesses who testified against him. Therefore, Petitioner cannot demonstrate that he was prejudiced by not taking the stand in his own defense. See Rega v. United States, 263 F.3d 18, 21-26 (2d Cir.2001) (holding that a defendant claiming that

36

counsel prevented him from testifying in his own behalf must demonstrate a reasonable probability that his testimony would have resulted in a different trial outcome).  This claim is denied.

### B.    Petitioner Claims Corozzo Should Have Called Dsafer Osmonevic As A Defense Witness

Petitioner contends that Corozzo should have called a potential witness, Dsafer Osmonevic, to testify on Petitioner's behalf, and that failure to do so could not been part of Corozzo's trial strategy.  Yet Petitioner concedes that "[o]n the surface, it appears that Corozzo may have had reasons for [not calling Osmonevic as a witness], since Osmonevic declined a requested interview with counsel."  (Pet. Br. at 27.)  This concession alone demonstrates why Corozzo's decision to not call Osmonevic cannot amount to ineffective assistance.  As Corozzo stated in his affidavit, he was aware at the time of trial that prior statements from Osmonevic contained in written reports contradicted the trial testimony of government witnesses, and that Osmonevic could have potentially provided exculpatory testimony.  (Corozzo Aff. at ¶¶ 10-12.)  However, he also explained that Osmonevic refused to be interviewed by Corozzo prior to testifying.  (Id. at ¶ 14.) Corozzo then informed Petitioner that although he had the right to subpoena Osmonevic to testify at trial, he was "against calling a fact witness who refused a defense request for an interview" and made the reasonable decision not to call him.

37

(Id. at ¶ 15.) This is precisely the type of trial strategy decision that cannot serve as the basis for an ineffective assistance claim. See, e.g., Eze v. Senkowski, 321 F.3d 110, 129 (2d Cir.2003); United States v. Schmidt, 105 F.3d 82, 90 (2d Cir.1997). This claim is denied.

### C. Petitioner Claims Corozzo Conducted An Irrelevant Cross-Examination As To Organized Crime Due To A Conflict Of Interest

Petitioner alleges that Corozzo's cross-examination of Tabbita was ineffective because it did not benefit Petitioner, but rather benefited Corozzo's partner's representation of alleged Gambino OCF associate Joseph O'Kane. Petitioner fails to articulate how Corozzo's representation may have helped O'Kane. Petitioner also claims that Corozzo's examination of witness Ronald Rivera was ineffective, though he fails to explain how counsel's representation was even remotely deficient, let alone how it amounted to ineffective assistance of counsel under Strickland. Having reviewed the record, the Court finds that this claim is meritless.

### VI. Petitioner Requests Leave To Amend His Petition To Include Blakely And Crawford Claims

Petitioner requests leave to amend his petition to include claims based on Blakely and Crawford. (Pet. Rep. at 25, 28.) However, neither of these cases is

38

retroactive to cases on collateral review. See Carmona v. United States, 390 F.3d 200, 202-03 (2d Cir.2004) (Blakely not retroactive); Wharton v. Bockting, 127 S.Ct. 1173, 1184 (2007) (Crawford not retroactive). Therefore, Petitioner's request to amend his petition to include claims based on Blakely and Crawford is denied because amendment would be futile.

## VII.    Certificate Of Appealability

The only remaining issue is the question of whether to grant a certificate of appealability ("COA"). For a COA to issue, petitioner must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A substantial showing "does not require a petitioner to demonstrate that he would prevail on the merits, but merely that 'reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.'" Santana v. United States, No. 04 CV 1111, 2005 WL 180932, at *7 (S.D.N.Y. Jan. 26, 2005) (quoting Rhagi v. Artuz, 309 F.3d 103, 106 (2d Cir. 2002)) (internal quotation marks and citation omitted). Petitioner has made no substantial showing of the denial of a constitutional right. Therefore, the Court will not issue a COA.

## CONCLUSION

After review of the filings and relevant portions of the record, which were sufficient to dispose of this motion, the Court hereby DENIES Petitioner's § 2255 motion and related requests. The Court also DENIES the issuance of a certificate of appealability. The Clerk of the Court is directed to close the case.

SO ORDERED.

Dated: July ___ , 2007
      Brooklyn, New York

_____
Senior United States District Judge

P-049